UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

IN THE MATTER OF THE EXTRADITION OF
ALEX SUYANOFF A/K/A
AMNON MORDAHAEV
---------------------------------------------------------------X

**MEMORANDUM AND OPINION**

12-MJ-462 (JMA)

A P P E A R A N C E S:

Michael S. Washor
145 E. 16th Street, Suite 20-F
New York, NY 10003

Robert P. Leighton
132 Nassau Street, Suite 900
New York, NY 10038
  *Attorneys for Alex Suyanoff*

Loretta E. Lynch
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
  *By Amy E. Larson, Assistant United States Attorney*

**AZRACK, United States Magistrate Judge:**

On May 10, 2012, Magistrate Judge Lois Bloom signed a provisional arrest warrant for

Alex Suyanoff a/k/a Amnon Mordahaev ("Suyanoff"). According to the complaint and affidavit

in support of the arrest warrant, Suyanoff was convicted and sentenced in Brazil to a twelve-year

term of imprisonment for drug trafficking but escaped after serving three-and-a-half years and

fled to the United States. Compl., ECF No. 1. Federal authorities located Suyanoff in Brooklyn,

New York. Id.

The Government of Brazil, acting through the United States Attorney for the Eastern District of New York, seeks to extradite Suyanoff, pursuant to the Treaty of Extradition Between the United States of America and the United States of Brazil of January 13, 1961 (the "Treaty"). Id. For the following reasons, I hereby certify that Suyanoff is extraditable under the Treaty.

## I. BACKGROUND

After Judge Bloom entered a provisional arrest warrant for Suyanoff, he appeared before me to be arraigned on May 21, 2012. Minute Entry, May 21, 2012, ECF No. 4. At this initial appearance, I set a bail hearing for May 30, 2012, and issued a temporary order of commitment. Id. The bail hearing was adjourned three times, before being scheduled for July 19, 2012. See Docket 12-MJ-462. On July 16, 2012, Suyanoff made a motion to dismiss the complaint. Mot. to Dismiss, ECF No. 10. He argued that, under the Treaty, the Government had only sixty days to present the papers necessary for extradition, and that if it did not present the papers to me by July 20, 2012, the sixtieth day after Suyanoff's arrest, Suyanoff would have to be released and the complaint against him dismissed. See id. The government opposed this motion, arguing that the Brazilian Government had submitted a formal extradition request to the State Department on July 17, 2012, thus satisfying the Treaty's 60-day deadline. Gov.'s Ltr. in Opp, ECF No. 12.

On July 19, 2012, I held a hearing wherein Suyanoff repeated his arguments on the record. See Minute Entry, July 19, 2012, ECF No. 13. The government represented that the extradition request had been received and was in the process of being certified and transported to this district. Tr. of Hearing. July 19, 2012, at 3:5–21. Suyanoff argued that the treaty required the government to present the papers to the presiding magistrate by the sixtieth day. Id. at 5:22–7:8. I rejected that argument and ruled on the record that Brazil had satisfied the Treaty's

requirements.[1]  Id. at 10:10–16.  Accordingly, I denied Suyanoff's application for release and gave the government one week to present the documents for my review.  Id.

The government delivered the extradition request to me on July 25, 2012.  The extradition request contains: (1) a declaration from attorney-advisor Jason A. Biros from the Department of State, certifying that the documents were submitted by the Brazilian government pursuant to a treaty in full force and effect between Brazil and the United States ("Biros Decl."); and (2) copies and translations of the formal charges and evidence from Suyanoff's convictions in Brazil.  Gov.'s Certified Extradition Request ("Extradition Papers").  Accordingly, I scheduled an extradition hearing and set a briefing schedule for written submissions.  Minute Entry, July 26, 2012, ECF No. 15.

In anticipation of the extradition hearing, Suyanoff submitted a brief opposing extradition.  Suyanoff Mem. in Opp. of Extradition ("Suyanoff Mem."), ECF No. 16.  The government responded with a memorandum in support of extradition.  Gov.'s Mem. in Supp. of Extradition ("Gov.'s Mem."), ECF No. 17.  Suyanoff submitted a response to the government's memorandum.  Suyanoff Reply to Gov.'s Mem. ("Suyanoff Reply"), ECF No. 19.  He later submitted an addendum to his arguments.  Suyanoff Ltr. Addendum ("Suyanoff Ltr."), ECF No. 20.

---

[1] There is a difference between extradition treaties requiring an extraditing state to *put evidence* before a magistrate within a certain period of time and extradition treaties requiring an extraditing state to *make the request for extradition* within a certain period of time.  See, e.g., Duran v. United States, 36 F. Supp. 2d 622, 626 (S.D.N.Y. 1999) (explaining precedent involving treaties that require that a request is received within a set number of days is inapposite to cases where the treaty requires the demanding country to present the evidence to a magistrate); United States v. Weibe, 733 F. 2d 549, 551 (8th Cir. 1984) (concluding that a treaty requiring that the request for extradition be made within 45 days was satisfied where the requesting country put the request into diplomatic channels within the proper timeframe, even though the paperwork was lost and had to be resubmitted after the deadline had passed). In this case, the Treaty specifies that "[i]f, within a maximum period of 60 days from the date of the provisional arrest . . . *the requesting State does not present the formal request for his extradition*, duly supported, the person detained will be set at liberty."  Treaty, Article VIII (emphasis added).  The Treaty explains that the request for extradition "shall be made through diplomatic channels or . . . by a consular officer."  Id., Article IX.  Because the Department of State received the request within sixty days of Suyanoff's arrest, the Treaty was satisfied.

At a hearing on September 13, 2012, I heard oral argument from Suyanoff and the government. Minute Entry, September 13, 2012, ECF No. 23. Although his numerous written submissions had argued that he must not be extradited due to the lack of due process in his trial and Brazil's inhumane prison conditions, Suyanoff conceded at oral argument that these arguments are not properly before this Court and must be raised to the Department of State. Tr. of Extradition Hrng, Sept. 13, 2012 ("Tr.") at 18:7–13, ECF No. 22. He devoted his argument to asserting that the Brazilian courts had not followed their own laws in his criminal proceedings, and that this Court must not consider the convictions sufficient to establish probable cause. Id. at 16:18–17:17. He also argued that the extradition papers themselves do not establish probable cause. Id. at 22:13–18. After the hearing, Suyanoff submitted an unsolicited post-hearing letter clarifying his oral arguments. Suyanoff Post-Hearing Ltr., ECF No. 24.

Suyanoff's arguments against extradition have changed over the course of these proceedings, but I will consider all of his arguments in determining whether to certify his extradition. For the reasons stated below, I reject Suyanoff's arguments and certify that he is extraditable.

## II.  DISCUSSION

### A.  Extradition Proceedings

Extradition is primarily a function of the executive branch. Austin v. Healey, 5 F.3d 598, 600 (2d Cir. 1993) (citing Martin v. Warden, Atlanta Pen., 993 F.2d 824, 828 (11th Cir. 1993)). The power to extradite a fugitive derives from the President's power to conduct foreign affairs. Martin, 993 F.2d at 828. A court's function in extradition proceedings is to determine whether the evidence submitted by the requesting State is "sufficient to sustain the charge under the provisions of the proper treaty or convention" before the Department of State makes the determination to surrender a fugitive to a requesting country. 18 U.S.C. § 3184. Thus, judicial

extradition proceedings are merely a "preliminary examination to determine whether a case is made out which will justify the holding of the accused and his surrender to the demanding nation." Lo Duca v. United States, 93 F.3d 1100, 1104 (2d Cir. 1996). Suyanoff does not dispute this Court's authority to issue a certification order for his extradition to Brazil.[2]

In an extradition proceeding, the court's role is only to determine whether: (1) the individual arrested is the individual sought; (2) the offenses charged are extraditable; (3) the requirement of "double criminality" is satisfied; (4) there is probable cause to believe the individual committed the offenses charged; (5) the required documents have been presented, translated and duly authenticated by the United States Consul; and (6) all other treaty procedures have been followed. In re Sacirbegovic, No. 03 CR Misc. 01, 2005 WL 107094, at *9–10 (S.D.N.Y. Jan. 19, 2005) (quoting In re Extradition of Rabelbauer, 638 F. Supp. 1085 (S.D.N.Y. 1986)).

If the government satisfies the requirements for extradition, the magistrate will certify the extradition to the Secretary of State and order the fugitive detained pending extradition. 18 U.S.C. § 3184. See also Sacirbegovic, 2005 WL 107094, at *21.

**B. Extradition Requirements in this Case**

Suyanoff argues that the government cannot satisfy the probable cause requirement because his conviction was obtained in violation of his rights and thus the government cannot

---

[2] As certified by the Department of State, the extradition treaty between Brazil and the United States is in full force and effect. Biros Decl. This Court is authorized under 18 U.S.C. § 3184 to conduct proceedings to certify an extradition order. Austin v. Healey, 5 F.3d 598 (2d Cir. 1993). This Court has jurisdiction over Suyanoff because he was found within this district. See Compl. at 3 (describing Suyanoff's residence in Brooklyn); 18 U.S.C. § 3184 (a court may issue a warrant upon a complaint charging a person found within the court's jurisdiction); In re Pazienza, 619 F. Supp. 611 (S.D.N.Y. 1985).

establish probable cause.  Suyanoff Mem.  He does not make any arguments concerning the other requirements for certification of extradition.[3]

### 1. Undisputed requirements

Suyanoff does not contest that he is the fugitive sought by the Brazilian government.  The government submitted his photograph and fingerprints as exhibits to the original complaint, <u>see</u> Compl. Ex. C, and the Extradition Papers also contain Suyanoff's photograph and finger prints, Extradition Papers.

Extraditable crimes are those "listed or defined as such by the applicable treaty."  <u>Spatola v. United States</u>, 741 F. Supp. 362, 371 (E.D.N.Y. 1990).  Suyanoff's crimes are extraditable because they are among the extraditable crimes listed in the Treaty.  Treaty, Article II ¶ 27 (listing "[c]rimes or offenses against the laws relating to the traffic in, or use of, or production or manufacture of, narcotic drugs or cannabis").

The dual criminality requirement asks "if the individual had committed the same acts in the United States, would a crime have been committed and would it have been a felony [under state or federal law]?"  <u>Yau-Leung v. Soscia</u>, 649 F.2d 914, 918 (2d Cir. 1981).  Here, the extraditable crimes—conspiracy to traffic narcotics and narcotics trafficking—are felonies under United States federal law.  <u>See</u> 21 U.S.C. §§ 841, 846 (prohibiting narcotics trafficking and conspiracy to traffic narcotics).

The final undisputed requirements are that the necessary documents for extradition be presented with translations, and that any other treaty provisions be followed.  The Treaty requires that a request for extradition based on conviction of a crime be supported by "a duly certified or authenticated copy of the final sentence of the competent court."  Treaty, Article IX.  These

---

[3] Suyanoff seeks to reserve his right, however, to challenge my decision to deny his motion to dismiss the complaint based on the 60-day limitation for the extradition request.  Suyanoff Mem. at 2.

documents must contain: (1) "a precise statement of the criminal act of which the person sought is . . . convicted"; (2) the place and date of the commission of the criminal act; (3) "an authenticated copy of the texts of the applicable laws of the requesting State including the laws relating to the limitation of the legal proceedings or the enforcement of the penalty for which the crime or offense for which the extradition of the person is sought"; and (4) data or records which will prove the identity of the person sought. Id.

The extradition documents submitted by the Brazilian government came with certified English translations, and their authenticity has been certified by the Department of State. Biros Decl. The papers include copies of the applicable laws, as well as records of Suyanoff's convictions, appeal, and sentence. Extradition Papers. The documents also include a description of the evidence presented against Suyanoff, and papers identifying him through photographs, fingerprints, and personal information. Id. Accordingly, I conclude that all of the treaty requirements have been satisfied, and thus the only remaining question as to Suyanoff's extraditability concerns the probable cause requirement.

### 2. The probable cause requirement

A probable cause inquiry in the extradition context requires the Court to "'determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction.'" Sacirbegovic, 2005 WL 107094, at *18 (quoting Collins v. Loisel, 259 U.S. 309, 316 (1922)). Probable cause in the extradition context is "measured by the standards used in federal preliminary proceedings," meaning it is a totality of the circumstances analysis wherein the court makes a "'practical, common-sense decision whether, given all the circumstances . . . , there is a fair probability that

the defendant committed the crime as defined.'" Sacirbegovic, 2005 WL 107094, at *19 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

The typical standards for admissibility of evidence do not apply in extradition proceedings, and thus hearsay and other evidence that would be inadmissible at trial may be considered in determining probable cause. In re Extradition of Ernst, No. 97 Crim. Misc. 1, 1998 WL 395267, at *8–9 (S.D.N.Y. July 14, 1998) (collecting cases). A magistrate may not, however, merely ratify conclusory statements that a fugitive committed a crime. Id.

To satisfy the probable cause requirement, the Government presents documentation of Suyanoff's convictions of one count of conspiracy to traffic narcotics and one count of narcotics trafficking. No further probable cause analysis is needed where foreign convictions, as opposed to foreign charges, or desire to prosecute, are presented. Spatola v. United States, 925 F.2d 615, 618 (2d Cir. 1991) ("[W]here there has been a judgment of conviction entered by a foreign court, there is no need for an 'independent' determination of probable cause: the relator's guilt is an adjudicated fact which *a fortiori* establishes probable cause.").

Suyanoff argues that his convictions were obtained in violation of his rights to counsel and to an interpreter, and therefore cannot be considered sufficient to establish probable cause. Specifically, he argues that his trial was conducted in Portuguese, a language in which he has very limited ability, and that his requests for an interpreter were denied. See Suyanoff Mem. 2– 5. To support this contention, Suyanoff presents numerous exhibits and requests the opportunity for an evidentiary hearing.[4] Suyanoff Mem.; Suyanoff Reply. He argues that this Court may consider the evidence because it is "explanatory evidence" that is allowed in extradition proceedings in order to "explain away or obliterate" probable cause. Suyanoff Reply at 6 (quoting Sandhu v. Burke, No. 97 Civ. 4608, 2008 WL 191707, at *5–6 (S.D.N.Y. Feb. 10,

---

[4] Via telephone call with Chambers, Suyanoff's attorney requested oral arguments in lieu of an evidentiary hearing.

2000)).  At oral argument, he moved these exhibits into evidence, and the government objected. Ultimately, whether these documents are in evidence is irrelevant because, even if this Court considers the numerous exhibits Suyanoff submitted, the Extradition Papers are still sufficient to establish probable cause.

According to the Extradition Papers, Suyanoff appealed his conviction and sentence on several grounds, including that he had been denied the right to a Portuguese interpreter, and was thus denied the right to a proper defense.  The Brazilian appellate court considered this argument and rejected it, explaining that "the claim of denial of an opportunity to be heard for not appointing an interpreter is totally unfounded, because [Suyanoff] is fluent in the national language, as it is clear from his interrogation."  Extradition Papers.

This Court has no reason to disbelieve the conclusions of two different courts in Brazil. What is more, in extradition proceedings, "it is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation." Ahmad v. Wigen, 910 F.2d 1063, 1066 (2d Cir. 1990).  Suyanoff's convictions were obtained following a trial at which he was present and represented by counsel.  Therefore, "to hold that such convictions do not constitute probable cause in the United States would require United States judicial officers to . . . substitute their judgment for that of foreign judges and juries." Spatola, 925 F.2d at 618.  This type of inquiry is "inconsistent with principles of comity."  Id.

Moreover, even if this Court were to require more than the mere fact of Suyanoff's convictions, the Extradition Papers provide a sufficient basis to conclude that there is probable cause to believe that Suyanoff committed the crimes for which Brazil seeks to extradite him. See Haxhiaj v. Hackman, 528 F.3d 282, 291 (4th Cir. 2008) (concluding, where a fugitive argued

that his convictions were obtained in absentia and thus not sufficient to support his extradition, that the government had submitted sufficient additional evidence to establish probable cause).

The Extradition Papers contain a summary of the evidence presented against Suyanoff at trial. Among the evidence summarized are the statements of the arresting officer and other police that they observed Suyanoff meet several persons and take a large amount of cash in United States dollars from them. The police then searched the car of Suyanoff's personal driver, who had brought him to the meeting, and found a quantity of cocaine. This evidence alone is sufficient to establish the probability of criminal activity.[5] See Gates, 462 U.S. at 238 (noting that the proof necessary to establish probable cause is "only the probability, and not a *prima facie* showing, of criminal activity."); see also Ernst, 1998 WL 395267, at *8 ("Probable cause is not an overly demanding standard.").

Suyanoff argued at the hearing that the police statements cannot establish probable cause because they are "notes on notes" and thus constitute "double hearsay." Tr. at 19:21–22:18. As discussed above, however, hearsay and other evidence that would be otherwise inadmissible may be considered in extradition proceedings. Ernst, 1998 WL 395267, at *8–9 (collecting cases). The statements are not merely conclusory statements that Suyanoff committed a crime, but are

---

[5] None of Suyanoff's evidentiary submissions "explain away" this evidence. Suyanoff submitted: (1) the affidavit of Suyanoff's Brazilian trial attorney explaining that he had to interpret many parts of the proceedings to Suyanoff; (2) an affidavit from a Brazilian attorney regarding the prison conditions in Brazil; (3) a handwritten note from an attorney regarding Brazilian prison conditions; (4) Western Union receipts Suyanoff labels "extortion payments"; (5) a photograph of Suyanoff's colostomy wounds; (6) an affidavit from a Bolivian attorney asserting that Suyanoff was convicted without due process or proper evidence; (7) a newspaper article about Suyanoff's escape from prison; (8) a newspaper article that appears to detail the kidnapping of a Brazilian tourist; (9) three additional affidavits about prison conditions in Brazil; (10) portions of the Extradition Papers; and (11) an affidavit from a doctor about Suyanoff's medical conditions. See Suyanoff Mem. Exs. A–M. As discussed infra, Suyanoff's arguments relating to the prison conditions in Brazil is not properly before this court. The allegation of the Bolivian attorney that Suyanoff was essentially framed is the only piece of evidence that could be argued to "explain away" the probable cause in this case. However, conclusory allegations that Suyanoff was framed do not explain away probable cause, but contradict the evidence presented in the Extradition Papers. Thus, these allegations are not properly before this Court. Matter of Sindona, 450 F. Supp. 672, 685 (S.D.N.Y. 1978).

the observations of several officers giving rise to a probability that Suyanoff committed a criminal act.

Suyanoff also argues that the Extradition Papers do not establish probable cause because the documents contained therein are not properly identified, and they refer to other documents that are not part of the record. See Tr. at 19–22; Suyanoff Post-Hearing Ltr. However, this Court's determination must be "whether there is competent evidence to justify holding the accused . . . not to determine whether the evidence is sufficient to justify a conviction." Collins, 259 U.S. at 316. The Department of State's Consul General certified that the extradition papers are the "copies of formal charges and evidence" against Suyanoff. I conclude that, even if Suyanoff's convictions themselves were not sufficient to satisfy the probable cause requirement, there is sufficient evidence in the papers to find probable cause. Therefore, any outside documents that would provide additional support to the Extradition Papers are irrelevant to my determination.

### C. **Suyanoff's Due Process Defense to Extradition**

In addition to arguing that the probable cause requirement is not satisfied, Suyanoff makes the general argument that he must not be extradited because his conviction was in violation of his rights and was the result of conduct that should shock the conscience of this Court. Suyanoff Mem. at 17; Suyanoff Ltr. Suyanoff also argues that the Brazilian courts denied his due process rights pursuant to the United States Constitution.

The Second Circuit has made clear that evidence of a country's law enforcement procedures should not be considered by a court presented with an extradition request made pursuant to a treaty. Ahmad, 910 F.2d at 1067. This is because "[t]he interests of international comity are ill-served by requiring a foreign nation . . . to satisfy a United States [court] concerning the fairness of its laws and the manner in which they are enforced." Id.

Suyanoff also cites <u>United State ex rel Bloomfield v. Gengler</u>, 507 F.2d 925, 927 (2d Cir. 1974), for the proposition that a Court should decline to certify extradition if extradition is "antipathetic to a federal court's sense of decency," such as a case where the defendant was unable to put up a defense. 507 F.2d 925 at 927. Nothing about this case is antipathetic to this Court's sense of decency: Suyanoff had an attorney, he put up a defense, and he had a full appeal wherein his arguments were considered and his sentence was reduced. His claims that he was entrapped by the Brazilian authorities and did not speak the Portuguese language during his trial are contradicted by the record presented in the Extradition Papers, and appear to this Court to be yet another attempt to evade responsibility for the crimes he committed in another country.

Suyanoff also argues that this Court must consider evidence showing that he did not actually speak Portuguese and that the Brazilian authorities' failure to provide him an interpreter thus "denied petitioner Due Process of Law under their own system of jurisprudence." Suyanoff Ltr. However, "it has long been recognized that an extradition judge should avoid making determinations regarding foreign law." <u>Skaftouros v. United States</u>, 667 F.3d 144, 156 (2d Cir. 2011). Any arguments regarding Brazil's compliance with its own laws, therefore, is "properly reserved for the courts of [Brazil]." <u>Id.</u>

Suyanoff also provides lengthy descriptions of the prison conditions in Brazil and his inhumane treatment by Brazilian authorities, and argues that this Court is "obligated not to extradite citizens who face procedures or treatment that 'shocks the conscience' of our judiciary within our current legal ethos." Suyanoff Mem. at 8–12 (quoting <u>Rosado v. Civiletti</u>, 621 F.2d 1179, 1195–96 (2d Cir. 1980)). Suyanoff argues that recent precedent reveals a shifting tide in the law regarding extradition treaties, indicating that courts should be more willing to consider

the humanitarian conditions a fugitive faces upon his return to the extraditing country.  Suyanoff Mem. at 16–17.

Recent Second Circuit precedent, however, affirms that "it is the Secretary[ of State's] role, not the courts', to determine whether extradition should be denied on humanitarian grounds or on account of the treatment that the fugitive is likely to receive upon his return to the requesting state."  Trinidad y Garcia v. Thomas, 683 F.3d 952, 960 (2d Cir. 2012).  Therefore, Suyanoff's arguments about the conditions he would face upon return to Brazil must be made to the Department of State, and are not properly before this Court.

For the reasons stated above, the Extradition Papers put forth by the government establish that Suyanoff is extraditable under the Treaty, and all of Suyanoff's arguments to the contrary either lack merit or are not properly before the Court in this proceeding.  Accordingly, the request of the Government of Brazil for the extradition of Alex Suyanoff, a/k/a Amnon Mordahaev, is granted and a certificate of extraditability shall be issued.  The Government is therefore directed to submit an Order of Extradition.  This Order should provide that its effectiveness will be stayed for 10 days so that Suyanoff may seek a writ of habeas corpus.

SO ORDERED.

Dated: September 20, 2012
       Brooklyn, New York

                              _____/s/_____
                              JOAN M. AZRACK
                              UNITED STATES MAGISTRATE JUDGE